# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11-cv-00539-MR
# [Criminal Case No. 3:08-cr-00222-MR-1]

| | |
|---|---|
| CHARLES NORMAN McKENZIE, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 4] and the Government's Motion for Summary Judgment [Doc. 11].

## I.    PROCEDURAL BACKGROUND

Petitioner Charles Norman McKenzie ("Petitioner") was indicted by a grand jury sitting in the Western District of North Carolina on October 29, 2008, and charged with numerous offenses related to bank fraud and identity theft, including one count of conspiracy to commit offenses against the United States (Count One); one count of access device fraud (Count Two); five counts of unlawful production of identification documents (Counts Three, Four, Five, Six, and Seven); one count of possession of

identification documents (Count Eight); three counts of false representation of social security numbers (Counts Nine, Ten, and Eleven); three counts of identification document fraud (Counts Thirteen, Fourteen, and Fifteen); and nine counts of aggravated identity theft (Counts Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five). [Criminal Case No. 3:08-cr-00222-MR-1, Doc. 3: Sealed Indictment]. Petitioner was arrested in the Southern District of Texas on July 24, 2009, pursuant to a warrant from this District.

Petitioner made his initial appearance in this District on August 13, 2009. On October 7, 2009, Petitioner pled guilty pursuant to a written plea agreement to Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Thirteen, Fourteen, Fifteen, and Twenty-Four of the Bill of Indictment. [Id., Doc. 32: Corrected Plea Agreement; Doc. 33: Acceptance and Entry of Guilty Plea]. On June 7, 2010, Petitioner was sentenced by this Court to a 45-month term of imprisonment, which consisted of a term of 21 months as to Counts One through Eleven and Thirteen through Fifteen; and a consecutive term of 24 months on Count Twenty-Four. [Id., Doc. 43: Judgment].

Petitioner did not file a direct appeal. Instead, on June 16, 2011, Petitioner filed a Motion for Relief of Judgment Pursuant to Federal Rules

of Civil Procedure 60(a), requesting the Court to issue an order clarifying that his sentence imposed in this action was to run concurrently with his sentence in the Southern District of Texas. [Id., Doc. 47]. On August 15, 2011, however, Petitioner filed a Motion for Leave to Amend his Rule 60(a) pleading and requested the Court to construe his Rule 60(a) pleading as a motion under 28 U.S.C. § 2255 ("2255 motion"). [Id., Doc. 48]. On October 26, 2011, this Court issued an order providing, in pertinent part, that Petitioner's Rule 60(a) motion was to be construed as a motion to vacate under 28 U.S.C. § 2255 and granted Petitioner thirty days to file an amended Section 2255 Motion. [Id., Doc. 49].

Petitioner filed the instant motion on November 29, 2011, placing the motion in the prison mailing system on November 25, 2011. [Doc. 4]. On December 12, 2011, this Court ordered the Government to respond to the motion to vacate. [Doc. 5]. On February 29, 2012, the Government filed its Answer and Motion for Summary Judgment. [Doc. 10; 11]. On August 15, 2012, this Court entered an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the motion for summary judgment and explaining the requirement that he present his own evidence by affidavit or unsworn

3

declarations. [Doc. 13]. Despite the Court's Roseboro order, Petitioner did not file a brief in response to the Government's summary judgment motion.

## II. FACTUAL BACKGROUND

### A. Offense Conduct

Petitioner's conviction in this Court originated with an investigation into identity theft and bank fraud in the Charlotte, North Carolina area. [Id., Doc. 39 at ¶ 4: PSR]. This investigation led to the revelation that Petitioner, along with two other co-conspirators, had assumed the personal identities of other people between June 2003 and May 2006, with most of the activity occurring beginning in October 2005. [Id. at ¶ 5]. Petitioner and his two co-conspirators would use these identities to open fraudulent checking accounts. [Id.]. The conspirators then used the checking accounts to make fraudulent purchases at retail stores. [Id. at ¶¶ 5; 12]. Throughout this time period, Petitioner used the social security numbers of different people to open checking accounts at different banks in furtherance of this scheme. [Id. at ¶¶ 8-11]. After the purchases were made, Petitioner and his co-conspirators would withdraw any money that was in the checking accounts and, before the checks were returned due to insufficient funds, they would return the items at different retail locations to receive cash

refunds. [Id. at ¶ 12]. The documented loss amount was $48,600.14. [Id. at ¶ 17].

> B. **The Charge in the Southern District of Texas**

On October 4, 2008 — twenty-five days before his indictment in this District — a criminal complaint was filed against Petitioner in the Southern District of Texas for "knowingly, intentionally, and unlawfully possess[ing] with intent to distribute a controlled substance in violation of Schedule I of the Controlled Substance Act of 1970." [Case No. 2:08-CR-00696, Doc. 1, S.D. Tex.]. The sworn affidavit supporting the criminal complaint in the Southern District of Texas sets forth the following facts relevant to Petitioner's illegal conduct in that district: At around 7:40 p.m. on October 3, 2008, Petitioner, driving a rental vehicle, approached a Border Patrol checkpoint operated by Border Patrol Agents Robert Martinez III, Refugio Garcia, and their service canine. [Doc. 10-1 at 2: Gov't's Ex. 1 to Corrected Answer to Complaint]. While Agent Martinez was questioning Petitioner, Agent Garcia advised Agent Martinez that his canine was alerting them to the trunk of Petitioner's vehicle. [Id.]. Petitioner gave the agents consent to search the trunk, where the agents found seven large duffle bags containing nine bundles of marijuana wrapped in green cellophane plastic.

[Id.]. The total weight of the marijuana was 81.5 kilograms. [Id.]. Petitioner was arrested and taken into custody. [Id.].

Petitioner was indicted by a grand jury in the Southern District of Texas on October 22, 2008, for violating 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), by "knowingly and intentionally possess[ing] with [the] intent to distribute a controlled substance." [Case No. 2:08-CR-00696, Doc. 13, S.D. Tex.]. On January 26, 2009, Petitioner pled guilty, and on June 18, 2009, he was sentenced to 37 months' imprisonment. [Id., Doc. 32].

### C. Sentencing in this Court

The United States Probation Office filed its final Presentence Report (PSR) on March 31, 2010. [Case No. 3:08-cr-00222-MR-1, Doc. 39]. The PSR recommended a base offense level of 14 by grouping all of the counts except for Count Twenty-Four. [Id. at ¶¶ 21-31]. Considering a two-level reduction for acceptance of responsibility, Petitioner's total offense level was 12. [Id. at ¶ 30; 31]. Petitioner received additional criminal history points because he was on probation for another identity theft offense at the time of the instant offenses, and the present offenses were committed less than two years after Petitioner's release from custody on another offense. [Id. at ¶¶ 40-42]. These circumstances and his prior offenses placed Petitioner in criminal history category IV. [Id. at ¶ 43]. Thus, Petitioner's

6

advisory guideline range was 21 to 27 months, plus a mandatory, consecutive term of 24 months for Count Twenty-Four. [Id. at ¶ 60].

On June 7, 2010, this Court sentenced Petitioner to 45 months' imprisonment, which consisted of 21 months as to all counts except Count Twenty-Four, for which he was sentenced to 24 months' imprisonment. [Id., Doc. 52 at 16: Sent. Hrg. Tr.]. This Court ordered that these two sentences were to run consecutively. [Id.].

### D. Petitioner's § 2255 Allegations

In his amended Section 2255 Motion, Petitioner alleges that at his sentencing hearing in this Court on June 7, 2010, he asked his attorney, Steve Meier, to request that the Court order his sentence in this Court to run concurrently with the sentence he received in the Southern District of Texas on June 18, 2009. [Doc. 4 at 4]. Petitioner claims that Attorney Meier denied his request, saying, "I don't want to ask [for a concurrent sentence] because if I do ask the judge might decide to run your time consecutive, but if I don't ask it is understood that if the judge is silent about it you will get it, so I don't want to say anything." [Id.]. According to Petitioner, if Attorney Meier had requested that the sentences run concurrently, there is a "reasonable probability" that the outcome would have been different in that this Court would have ordered Petitioner's

sentence in this Court to run concurrently with his sentence in the Southern District of Texas. [Id.].

### E.     Trial Counsel's Response

In response to Petitioner's motion, and in support of its summary judgment motion, the Government has submitted an affidavit from Mr. Meier. [Doc. 10-2: Meier Aff.]. In his affidavit, Mr. Meier explains that he and Petitioner discussed the issue of whether his sentence in this Court would run consecutive to, or concurrent with, his sentence in the Southern District of Texas. Mr. Meier states that, after telling Petitioner that he believed Government counsel would oppose any motion to run the sentences concurrently, Mr. Meier advised Petitioner that, because the two sentences resulted from two, independent illegal actions and his sentence in this Court included a two-year consecutive term of imprisonment, he believed it more likely that the Court would impose a consecutive sentence if a concurrent sentence were requested. [Id. at 1]. Mr. Meier states in his affidavit that "[a]t no time did [he] advise or guarantee the [Petitioner] that his time would run concurrent or that he would receive concurrent sentences if no action was taken by the [Court]," although he also states that he believed that if the Court did not provide explicitly that the sentences should be served consecutively, there was a chance that the

8

Bureau of Prisons could run the time concurrently. [Id.]. Mr. Meier states that he informed Petitioner "of the risks both ways"; that he advised Petitioner, based on his experience, his opinion of the best strategy; and that Petitioner agreed with that strategy. [Id.]. Responding specifically to Petitioner's allegations, Mr. Meier concludes, "[Petitioner] was neither as adamant as he now claims nor was [Mr. Meier] as committed to an outcome [he] could not predict as [Petitioner] now asserts." [Id. at 2].

### III. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents,

9

> electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to

> the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

## IV. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163

F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

In his sole ground for relief, Petitioner alleges that when he asked Attorney Meier to make the motion for the Court to order that his sentence from this Court run concurrently with his sentence received in Texas, Attorney Meier denied this request based solely on a misinterpretation of law. [Doc. 4 at 15]. Mr. Meier states in his affidavit, however, that this assertion is false, making clear that "[a]t no time did [he] advise or guarantee the [Petitioner] that his time would run concurrent or that he would receive concurrent sentences if no action was taken by the [Court]." [Doc. 10-2 at 1]. As noted, Mr. Meier stated that he discussed the possibility of concurrent sentences with Petitioner and advised Petitioner that the Government would most likely oppose, and the Court would mostly deny, a concurrent sentence. While Mr. Meier did leave some room for Petitioner to hope for a concurrent sentence by stating that "there was

12

some reasoning that if a Judge remained silent, the Bureau of Prisons [("BOP")] could run the time concurrently," he made it clear that such a result was unlikely.

Even though Meier's and Petitioner's versions are not identical, they do not create a genuine issue of material fact. In his supporting memorandum to his Section 2255 Motion, Petitioner states that "the law is clear that Mr. Attorney Meier should have made the motion whether or not [I] requested the same." [Doc. 4 at 15]. Petitioner, however, has failed to cite any law that supports this statement. Moreover, the case law Petitioner does provide in his memorandum simply restates the principles set forth in Strickland and provide no further support for his allegations. In sum, Petitioner has failed to show that Mr. Meier's performance was deficient.

Even if Plaintiff could show that Plaintiff's performance was deficient, he fails to show the prejudice prong of Strickland. Under 18 U.S.C. § 3584(a), "[m]ultiple terms of imprisonment imposed at different times are to run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a) (emphasis added). Section 3584 also provides that, in determining whether such terms are to run concurrently or consecutively, the court "shall consider, as to each offense for which a term

of imprisonment is being imposed, the factors set forth in section 3553(a)." Id. § 3584(b). The factors to be considered under § 3553(a) include, but are not limited to: (1) the nature and the circumstances of the offense and the history and characteristics of the defendant; (2) the need to impose the sentence to reflect the seriousness of the offense; (3) the need to promote respect for the law; (4) providing just punishment for the offense; (5) affording adequate deterrence to criminal conduct; and (6) protecting the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)-(2).

Here, Petitioner speculates that this Court would have granted his request for his sentences to run concurrently, but such speculation is not sufficient to prove a reasonable probability of a different result. Additionally, an objective analysis based on the factors listed in § 3553(a) supports the imposition of consecutive sentences. First, the offense conduct in the Southern District of Texas was trafficking marijuana into the United States from Mexico. Petitioner's offense conduct in this district, by contrast, was bank fraud and identity theft. The nature and circumstances of Petitioner's offenses in this district, then, are significantly different from his offense in the Southern District of Texas. Here, the imposition of concurrent sentences would effectively provide *no punishment at all* for one

of two, entirely different criminal schemes; thus, it is unlikely that the Court would have ordered concurrent sentences if Petitioner had asked for them.

Most importantly. Petitioner pleaded guilty to Count 24, which was a violation of 18 U.S.C. §1028A. That provision expressly prohibits the imposition of a concurrent sentence as Petitioner argues he would have received. 18 U.S.C. §1028A(b)(2).

Thus, it is a virtual certainty that this Court would *not* have imposed concurrent sentences. Given that Petitioner has a significant criminal history, including convictions for theft, receiving stolen property, and criminal conspiracy in 1999, and for identify theft again in Charlotte in 2002 — all within two years of his commission of the instant offenses in this District, the possibility that the Court may have imposed concurrent sentences slides even further. Because consideration of the § 3553(a) sentencing factors supports the imposition of consecutive, as opposed to concurrent sentences, Petitioner has not overcome the presumption of consecutive sentences provided by § 3584(a), and he has not shown a reasonable probability that, had he requested concurrent sentences, this Court would have imposed concurrent sentences. Even if this Court were to find that Attorney Meier's performance was deficient, Petitioner's 2255 motion would still fail because he is unable to prove prejudice. For these

reasons Petitioner's ineffective assistance of counsel claim is without merit and his petition will be denied.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Respondent's motion for summary judgment and dismiss the petition.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment [Doc. 11] is **GRANTED**, and Petitioner's § 2255 Amended Motion to Vacate [Doc. 4] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 29, 2014

Martin Reidinger
United States District Judge